[NOTE. The claimant of the C. F. Ackerman subsequently appealed to the circuit court, where the decree herein was affirmed. Case unreported.

[For decision granting a motion for summary judgment against Erick P. Lindahl, who, with Thomas Kenny, deceased, was a stipulator for the release of the C. F. Ackerman, see Case No. 2,564.]

---

## Case No. 2,563.

### The C. F. ACKERMAN.

### The PALESTINE.

#### [9 Ben. 179.] [1]

District Court, E. D. New York. June, 1877.

COLLISION IN LONG ISLAND SOUND—SAILING VESSEL AND STEAMER.

Where a schooner, the P., closehauled on a N. N. W. breeze, met a tug, the C. F. A., with three barges in tow, nearly head on, and keeping her course came in collision with the tow: Held, that the facts proved showed the tug to have been unable to change her course as required by rule 20 of the navigation rules (Rev. St. § 4233), but that she was in fault for not making known such inability to the schooner by the hoisting two vertical lights as required by rule 24.

[Cited in The Rose Culkin, 52 Fed. 330.]

In admiralty.

Owen & Gray, for the schooner.
John J. Allen, for the steam tug.

BENEDICT, District Judge. These are cross-actions brought to recover the damages caused by a collision that occurred in Long Island Sound on the 31st of November, 1876, between the schooner Palestine and a tow.

The schooner was bound to the westward closehauled upon a north northwest wind. The tow was bound to the eastward, and consisted of the tug C. F. Ackerman with three heavily-loaded barges in tow astern. The allegation on the part of the schooner is that she held her course, and the tug failed to keep out of her way, as she was bound to do. The allegation on the part of the tug is that the schooner did not keep her course, but, when near the tug, luffed up, and by this change of course caused the collision. The evidence does not sustain the charge that the collision was caused by the schooner's luffing. On the contrary, the proof is that the schooner held her course until just before the collision. On the proof without regard to the pleadings it might be found that these vessels were approaching nearly head on, so that a collision could only be avoided by one or the other giving way; and perhaps also found that the capacity of the tug to give way, hampered as she

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

was by three heavy barges in tow astern, and moving at a very low rate of speed, was far inferior to that of the schooner close-hauled, so that it was impossible for her to move herself and tow out of the way of an approaching vessel within any reasonable time. If such were the courses and situations of the two vessels, according to the principle of the maritime law lying at the foundation of the rules of navigation, the duty of avoiding the collision attached to the one able to do it, which in the case supposed would be the sailing vessel, as she could fall off, and not to the tug that could change neither way. But it must be noticed that the courts are now called on to apply a statute to cases of collision in this locality, and that by rule 20 of the navigation rules (Rev. St. § 4233), when proceeding in opposite directions so as to involve risks of collision, the duty of avoiding a sailing vessel is cast upon the steam vessel, in all cases, subject only to rule 24. Whether rule 24 could be resorted to in a proper case, to cast upon a sailing vessel in the open sound the obligation to avoid a steam vessel seen approaching, need not be decided here, because it is certain that, if the condition of the tug was such by reason of her tow as to render it impossible for her to discharge what, under ordinary circumstances, is the duty of the steam vessel, and entitled her by virtue of rule 24 to call upon approaching sailing vessels to perform the extraordinary duty of altering their courses to avoid her, it was manifestly great neglect on the part of the tug not to disclose her condition to approaching vessels, by displaying the two masthead vertical lights required by rule 4 to be displayed by steam vessels when towing other vessels. That the tug did not display such lights is proved, and the absence of such lights would cast upon her the responsibility of the collision, even were the case to be that I have supposed, instead of that stated in the pleadings.

The libel against the tug is therefore maintained, and the libel against the schooner is dismissed, with costs.